IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| THE OFFICE OF THE COMMISSIONER OF BASEBALL, an unincorporated association doing business as Major League Baseball, THE NATIONAL BASKETBALL ASSOCIATION, a joint venture, THE NATIONAL COLLEGIATE ATHLETIC ASSOCIATION, an unincorporated association, THE NATIONAL FOOTBALL LEAGUE, an unincorporated association, and THE NATIONAL HOCKEY LEAGUE, an unincorporated association, | ) ) ) ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) ) | C.A. No. 09-538 (GMS) |
| v. | ) ) | |
| JACK A. MARKELL, Governor of the State of Delaware, and WAYNE LEMONS, Director of the Delaware State Lottery Office, | ) ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM ORDER**

    1.    On July 24, 2009, the plaintiffs filed the complaint in this action alleging, among other things, that the Delaware Sports Lottery Act (the "Act"), 29 *Del. C.* § 4825, and the regulations proposed pursuant to the Act violate the Professional and Amateur Sports Protection Act ("PASPA"), 28 U.S.C. § 3701 *et seq.* and the Delaware Constitution, Del. Const. art. II, § 17. (D.I. 1.)

    2.    On July 28, 2009, pursuant to Fed. R. Civ. P. 65(a), the plaintiffs filed a motion for a preliminary injunction seeking to enjoin the defendants from commencing any "sports lottery" that permits: "(i) single-game sports betting, (ii) betting on sports other than professional football, or (iii) any other sports betting scheme that was not conducted by the State of Delaware in 1976." (D.I. 8.)

3. In the exercise of its discretion, the court has considered the applicable law, and carefully reviewed: (1) the pleadings filed thus far in this matter (D.I. 1); (2) the federal statute at issue; (3) the plaintiffs' motion for preliminary injunction (D.I. 8) ; (4) the plaintiffs' opening brief and attachments in support of their motion for preliminary injunction (D.I. 9-12); (5) the parties' additional submissions filed in this case, including the plaintiffs' ten-page, single-spaced, letter brief (D.I. 14), and the defendants' three-page, single-spaced, letter brief filed on August 3, 2009 (D.I. 15), as well as the defendants' four affidavits filed on August 4, 2009 (D.I. 17).

4. The court has also considered the arguments of counsel for the parties during a one-hour teleconference in this matter conducted on July 29, 2009 (D.I. 13). After giving due consideration to all of these things, the court concludes that a preliminary injunction is not warranted in this case. The court will, therefore, deny the plaintiffs' motion.

5. With good reason, federal courts are typically reluctant to grant the type of relief requested here. Indeed, the Third Circuit has made clear that a "preliminary injunction is an extraordinary remedy that should be granted only if: (1) the plaintiff is likely to succeed on the merits; (2) denial will result in irreparable harm to the plaintiff; (3) granting the injunction will not result in irreparable harm to the defendant; and (4) granting the injunction is in the public interest." *NutraSweet Co. v. Vit-Mar Enterprises, Inc.*, 176 F.3d 151, 153 (3d Cir. 1999) (citation omitted). "A plaintiff's failure to establish any element in its favor renders a preliminary injunction inappropriate." *See Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 192 (3d Cir. 1990) ("Only if the movant produces evidence sufficient to convince the trial judge that all four factors favor preliminary relief should the injunction issue.")

6. First, based on the record as it stands, the court is not convinced that the plaintiffs will

"likely succeed on the merits" in this case. *NutraSweet*, 176 F.3d at 153. In fact, both sides vigorously and ably contend that they are entitled to win on the merits. Indeed, the plaintiffs propose, despite the nascent nature of this action, that the court and the parties go straight into the summary judgment phase of the litigation. Specifically, at page 2 of their August 3, 2009 letter brief, the plaintiffs "ask the Court [] to treat plaintiffs' motion [for injunctive relief] as one for summary judgment." (D.I. 14 at 2.) In addition, at page 7 of their letter brief, the plaintiffs write; "plaintiffs respectfully request that the Court treat their motion for a preliminary injunction as one for summary judgment on Count I of the Complaint, alleging violation of [the Professional and Amateur Sports Protection Act] PASPA." (*Id.* at 7.) Indeed, the plaintiffs propose, "that the Court schedule a summary judgment proceeding such that this matter can be decided prior to the first week of September 2009," and generously offer to rely on the combination of their brief in support of their motion for a preliminary injunction and their letter brief of August 3. (*Id.*)

      7.      In this matter, as whenever a party invokes the authority of the court, the ends of justice dictate a judge, where possible, proceed with deliberation and caution – especially when a party seeks extraordinary relief of the type at issue here. On the current record, the court is simply not in a position to give either side a nod on the merits. Indeed, there may exist factual disputes as to what, if anything, the State of Delaware actually did in the past with respect to sports gambling; or as to what, if any, proposed sports betting activities are exempted by the federal statute at issue. On this record, and in light of these critical issues, the court cannot say that the plaintiffs will likely succeed on the merits.

      8.      Second, the court is not certain that the plaintiffs have demonstrated irreparable harm, so as to warrant the court granting preliminary injunctive relief. In enacting the federal legislation

at issue here, Congress appears to have made specific findings as to the "harm" it intended to address. Nevertheless, and contrary to what the plaintiffs seem to suggest, in the context of a motion under Fed. R. Civ. P. 65(a), and considering the language of the actual statute at issue, these findings do not mandate or require under all circumstances that this court grant preliminary injunctive relief. In other words, this court is not convinced that the underlying statutorily defined harm is dispositive of the question as to whether the plaintiffs are entitled to preliminary injunctive relief or *per se* establishes the existence of the threat of irreparable harm that might necessitate the issuance of a preliminary injunction. To the contrary, Third Circuit precedent requires that the court consider this factor along with and in the context of each of the factors courts traditionally consider when confronted with a request for a preliminary injunction. *See NutraSweet*, 176 F.3d at 153; *see also Opticians Ass'n*, 920 F.2d at 192 ("[w]hen ruling on such a motion, the district court must consider four factors").

9. In addition, it is noteworthy that when asked some 32 years ago by the National Football League, a party to this action, to grant preliminary injunctive relief barring the State of Delaware from instituting a lottery game based on games of the NFL, an issue at least related to the matter before the court today, in denying the NFL's request for a temporary restraining order, a respected, indeed, a distinguished judge of this court and now the Third Circuit Court of Appeals, Judge Walter K. Stapleton, wrote the following:

> I should add that the plaintiffs have not demonstrated that the existence of gambling on its games, *per se*, has or will damage its good will or reputation for integrity. By this, I do not suggest that an association of the NFL with a gambling enterprise in the minds of the public would not have a deleterious effect on its business. Such an association presupposes public perception of the NFL sponsorship or approval of a gambling enterprise or at least confusion on this score . . . . I do find, however, that the existence of gambling on NFL games, unaccompanied by any confusion with respect to sponsorship, has not injured the NFL and there is no reason to believe it will do so in the future. The record shows that extensive gambling on the NFL has existed for many years and that this fact of common public knowledge has not injured plaintiffs, or their reputation.

*Nat'l Football League v. Governor of the State of Delaware*, 435 F. Supp. 1372, 1378 (D. Del. 1977).

10. Today, the court sees some irony in the fact that Judge Stapleton made his findings 16 years before the Congressional findings that underpin PASPA, and that another 16 years have elapsed since the passage of that Act and the reappearance of the NFL, along with other parties plaintiff, before this court making similar claims to being in imminent danger of having their reputations and good will compromised because of yet another attempt by Delaware to engage in gambling activity associated with professional football and other sports. The irony is this: during the course of the court's discussion with counsel on July 29, 2009, counsel for the defendants made

some, apparently fact based assertions which, while certainly not the equivalent of evidence based findings of a court or the Congress of the United States, are, at least relevant to the court's consideration of the issue of irreparable harm when asked to grant a request for preliminary injunctive relief. Counsel observed:

> For example, the New York Times reported two years ago that the Motorcity Casino is owned by the same person who owns the Detroit Red Wings . . . Marian Ilitch co-owns the Detroit Red Wings with her husband Michael, Michael owns the Detroit Tigers . . . In the NBA, the Sacramento Kings [are] owned by the same people who own the Palms Casino in Las Vegas. . . The Chairman and CEO of Harrah's owns a stake in the Celtics [that would be the Boston Celtics] . . . There [are] plenty of instances where the NFL and other sports leagues allow broadcast affiliates to broadcast betting information, betting lines, injury reports . . . advice on which side of a bet to be on . . . Major League Baseball recently loosened its policy on casino and gambling sponsorship, so Harrah's Casino is a signature partner of the Mets. . . The Mohegan Sun Hotel & Casino operates a Mohegan Sports Bar at Yankee Stadium. The Brewers, the Braves, the Diamondbacks, the Angels, the Dodgers, the Marlins and the Cubs [all MLB baseball clubs] all have sponsorship deals with casinos and gambling interests or state lotteries. . . The NHL hosted its 2009 Player Awards in the Palms Casino.

(D.I. 13 at 21-22.)

11. Clearly, circumstances have changed materially since Judge Stapleton issued his ruling in 1977, that is, the Congress has enacted PASPA. This court cannot and will not ignore either the plain language of the statute or the Congressional findings that led to its passage. In spite of these findings, however, it is important to note, particularly within the context of a request for a preliminary injunction, that it is not readily apparent that Congress determined the harm it found demands the award of preliminary injunctive relief. In other words, despite its findings, by the plain language of the statute, the Congress seems to have left in tact the ability of judicial officers to apply

well-settled and proven principles of equity when deciding whether to grant the type of relief requested here. Simply put, unlike other enactments of Congress which, upon the judgment or finding of a named party or official, seem to require the court do a thing such as issue an injunction, *e.g.*, the Emergency Price Control Act of 1942[1] which provides that an injunction "*shall* be granted without bond," PASPA, under the sub-heading "Injunctions" provides: "A civil action to enjoin a violation of section 3702 *may* be commenced in an appropriate district court of the United States." 28 U.S.C. § 3703. Thus, it seems reasonable to conclude that a district court may still determine whether the requirements for the issuance of a preliminary injunction have or have not been met, even in light of PASPA.

12. Third, the court cannot say, at this stage in the proceedings, that granting the injunction will result in irreparable harm to the defendants. However, the court also cannot say that granting an injunction in this case is in the public interest. In fact, given that the defendants claim they intend to use monies raised from the activities at issue in this case to balance the State's budget, the converse may very well be true. At this juncture in the proceedings, the court cannot say either way. As such, the public interest factor is, at best, neutral on the issue of whether to grant a preliminary injunction.

---

[1] 50 U.S.C. Appx. § 901 *et seq.* (repealed 1956).

13.     In considering and balancing the preliminary injunction factors, and in light of the present record, at this early stage of the case, the court concludes that a preliminary injunction is not appropriate. Therefore, IT IS HEREBY ORDERED that the plaintiffs' motion for preliminary injunction (D.I. 8) is DENIED.

Dated: August 10, 2009               /s/ Gregory M. Sleet
                                                 CHIEF, UNITED STATES DISTRICT JUDGE